IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA K. o/b/o A.K., a minor child, | ) ) |
| Plaintiff, | ) ) Civil Action No. 7:19CV00425 |
| v. | ) ) **MEMORANDUM OPINION** ) |
| ANDREW SAUL, Commissioner of Social Security, | ) ) By: Hon. Glen E. Conrad ) Senior United States District Judge ) |
| Defendant. | ) ) |

Plaintiff Lisa K. filed this action on behalf of her daughter, A.K., challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for child's supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 1381–1383(d). Jurisdiction of this court is established pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g).

The court previously referred this case to a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Standing Order 2019-6. On May 1, 2020, the magistrate judge submitted a report in which he recommends that the court affirm the Commissioner's final decision. Plaintiff has filed objections to the magistrate judge's report, and the Commissioner has responded, making the matter ripe for the court's consideration.

This court is charged to conduct a de novo review. See 28 U.S.C. § 636(b)(1). This court's review is limited to a determination as to whether the Commissioner's final decision is supported by substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the

record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Richardson v. Perales, 402 U.S. 389, 401 (1971).

On September 29, 2014, Lisa protectively filed an application for child's supplemental security income benefits on behalf of A.K., who was born in 2007. R. 192–200.[1] Plaintiff's claim was denied upon initial consideration and reconsideration. R. 73–82, 83–93. Plaintiff then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated July 9, 2018, the Law Judge also concluded that plaintiff is not entitled to child's supplemental security income benefits. R. 19–33. The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. R. 1–3. Having exhausted all available administrative remedies, Lisa has now appealed to this court.

A child is disabled under the Social Security Act if she has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A three-step inquiry is used to assess whether a child meets this definition. 20 C.F.R. § 416.924. The first determination is whether the child is working and performing substantial gainful activity. Id. § 416.924(b). If the child is not working, it must then be decided whether the child suffers from a severe impairment or combination of impairments. Id. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment(s) meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. Id. § 416.924(d).

---

[1] For purposes of consistency and clarity, A.K. shall hereinafter be referred to as the plaintiff in this case.

To determine whether an impairment is functionally equivalent to a listed impairment, the Law Judge evaluates its severity in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Id. § 416.926a(b)(l). Functional equivalence exists if the Law Judge finds a "marked" limitation in two areas of functioning or an "extreme" limitation in one area of functioning. Id. § 416.926a(d).

In this case, the Law Judge found that A.K. suffers from the severe impairments of specified learning disorder and reading / math disorder. However, the Law Judge found that plaintiff has a less than marked to marked limitation in the functional domain of acquiring and using information, a less than marked limitation in the domains of attending and completing tasks and interacting and relating with others, and no limitation in the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. R. 27–32. Accordingly, the Law Judge determined that plaintiff does not have an impairment or combination of impairments that meets or substantially equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I, and is not disabled under the Act. R. 32.

As previously noted, the court referred this case to a magistrate judge for a report setting forth findings of fact, conclusions of law, and a recommended disposition. In his report, the magistrate judge recommended that the court affirm the final decision of the Commissioner denying plaintiff's claim for child's supplemental security income benefits. Succinctly stated, the magistrate judge concluded that substantial evidence supports the Law Judge's determinations.

In her objections to the report and recommendation, Lisa challenges the Law Judge's findings in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and the Law Judge's determinations regarding the subjective

allegations of A.K. and Lisa, arguing that they are not supported by substantial evidence  As to acquiring and using information, Lisa argues that the Law Judge ignored the opinions of A.K.'s teachers and evidence that A.K. performs below her grade level.  ECF No. 19 at 1–6.  Regarding attending and completing tasks and interacting and relating with others, Lisa contends that the Law Judge overlooked evidence, misinterpreted Lisa's testimony at the hearing, and should not have relied on the state agency opinions that were issued before plaintiff's fifth grade teachers submitted teacher questionnaires.  R. 6–9.  In Lisa's objections to the Law Judge's findings regarding her and A.K.'s subjective allegations, Lisa makes arguments similar to those addressed above.  R. 9–10.  After reviewing the record and considering the arguments presented on appeal, the court finds that Lisa's objections must be overruled.

The administrative regulations applicable to a claim for child's supplemental security income benefits provide that the Social Security Administration will "consider all evidence in [the] case record" in determining a child's functioning, including information from medical sources and nonmedical sources.  20 C.F.R. § 416.924a.  These regulations also recognize that school records, including reports from teachers, are "important sources of information" regarding a claimant's impairment(s) and the resulting impact on her ability to function.  20 C.F.R. § 416.924a(b)(7).  The regulations provide—speaking to the claimant—that "if you go to school," "we will ask your teacher(s) about your performance in your activities throughout your school day," and "[w]e will consider all the evidence we receive from your school, including teacher questionnaires . . . ."  Id.

In this case, Lisa submitted large amounts of evidence from plaintiff's school.  For example, Kay Alley, M.S., a speech-language pathologist at A.K.'s elementary school, completed a Speech/Language Pathologist Questionnaire dated February 1, 2016.  R. 432–33.  Alley indicated that A.K. has received weekly speech services since preschool, and "has shown correct production

4

of all speech sounds on testing in [January 20, 2016]." R. 432. Alley also reported that A.K. can be understood by both familiar and unfamiliar listeners roughly 90% of the time, has "moderate difficulty with higher level expressive language tasks," and "sometimes hesitates" when required to answer questions aloud, but has "great functional communication skills" and is "very social." R. 432–33. Alley also indicated that A.K. behaves well at school. She "pays attention well and stays on task with minimal reminders." R. 433. The record also included plaintiff's Individualized Education Plan ("IEP") assessments, teacher questionnaires, and report cards up to midway through the fifth grade. A.K. has neither skipped a grade nor needed to repeat a grade.

In September 2015, at age eight, A.K. was referred for a consultative examination with Jeffrey B. Luckett, Ph.D. Dr. Luckett performed an intellectual assessment, a clinical interview, and a mental status examination. R. 413–18. Dr. Luckett noted that A.K. had an IEP for language arts and math, typically earned passing grades at the time. He found that A.K. exhibited "exemplary behavior," "a winning personality and devoted a great deal of attention, concentration, and effort to her interview" and testing. R. 414, 416. The tests conducted by Dr. Luckett compared A.K. to an average child of her age and placed A.K. in the "low average range" of intellectual functioning for verbal comprehension and visual-spatial abilities and the "average range" for fluid reasoning, working memory, process speed, and full scale IQ abilities. R. 414, 416–17. Dr. Luckett opined that the test results were "an accurate measure" of A.K.'s intellectual functioning. Id. Further, although he concluded that plaintiff has "deficits in the areas of reading and math," he found that A.K. had "made great progress in all academic areas" that year. R. 414. Dr. Luckett "could note no difficulties with any type of receptive or expressive" communication skills. R. 415.

In October 2015, state agency consultants Leslie Ellwood, M.D., Stephen P. Saxby, Ph.D., and Cathi Laderberg, a speech language pathology consultant, determined that A.K. has less than

marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and no limitations in the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. They also found that A.K.'s learning disorder is a severe impairment but her speech and language impairment is not severe. R. 78–79. In February 2016, state agency consultants Dr. Pamela Duff, Richard J. Milan, Jr., Ph.D., and Patricia Peters, a speech-pathology consultant, reached the same conclusions. R. 89–90. The state agency consultants noted that, although A.K. has been diagnosed with a specific learning disability, her testing indicates a normal-average I.Q., and that A.K. has shown some improvement with grammar and dialect over time. R. 78–79.

The Law Judge held a hearing on May 3, 2018, at which both Lisa and plaintiff testified. Plaintiff was then ten years old and in the fifth grade. Plaintiff testified that she is able to dress herself, although Lisa usually picks out her clothes. A.K. also stated that she grooms herself and does her chores. R. 46. She has one friend who she visits sometimes, and she enjoys playing with her nephew. R. 47. At the time, most of A.K.'s grades were satisfactory, except for science, which she needed to practice a bit more. R. 50–53. She testified that she usually is able to do her school work like she is supposed to, although she has some trouble reading hard words. R. 56–58. Lisa testified that she was concerned with plaintiff's reading ability, initially stating that A.K. reads at perhaps a first grade level, but later that plaintiff reads at a third grade level. R. 60–61, 69. Lisa relayed that she was worried about A.K. being bullied at school, and stated that plaintiff had pushed a boy who made fun of her once, but that she does not have any behavioral problems now. R. 64, 70; see also R. 414 (Lisa reported that teachers "were shocked" when A.K. had gotten into the altercation). Lisa also stated that she did not think plaintiff has any speech difficulties any more. R. 66. Further, A.K. only receives medication for allergies, not for any other conditions.

As noted above, the Law Judge found that A.K. suffers from the severe impairments of specified learning disorder and reading / math disorder. R. 22. However, the Law Judge determined that A.K.'s severe impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. Specifically, the ALJ found that A.K. has a less than marked to marked limitation in the domain of acquiring and using information; less than marked limitations in the domains of attending and completing tasks and interacting and relating with others; and no limitations in the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. R. 27–32.

The court is constrained to overrule the objections regarding the determination that A.K. has a less than marked to marked limitation in the domain of acquiring and using information. The Law Judge pointed out plaintiff's "longstanding" therapy and academic assistance, which has led to "improvement" over time, while also noting that the plaintiff's I.Q. indicates "average intellectual capacity" and hard work by the plaintiff, despite having a "specific learning disability." R. 28. The Law Judge also cited and recounted feedback from A.K's fifth grade teachers that she had been "working towards" certain educational goals, and other reports that plaintiff was "generally at" grade level. R. 25, 26; see also R. 327–28 (2017–2018 progress report listing plaintiff as performing "at or above grade level" in most individual tasks, while at or near grade level in four of six realms); R. 284–85 (2016–2017 progress report with lower ratings). Thus, contrary to Lisa's objection, the Law Judge did not improperly ignore A.K.'s issues performing at grade level in some areas. Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision.") (internal quotation marks omitted). To be sure, while one of plaintiff's IEP assessment

7

describes "great progress," R. 439, another notes difficulty reading, R. 308. Yet another assessment reports that plaintiff "does very well in small-group settings with modified assignments." R. 327; see also R. 305–09 (commenting that A.K. completed a reading test with 94% accuracy, and finding sufficient progress for nine of twelve IEP objectives in which A.K. received instruction). And while A.K. has struggled with her education at times, her teachers report that she works hard and the record does not show that she has needed to repeat any grade. Accordingly, the court concludes that substantial evidence supports the Law Judge's determination in this domain. See Bryant ex rel. Bryant v. Barnhart, 63 F. App'x 90, 95 (4th Cir. 2003) (concluding that the claimant "may have suffered limitations that seriously interfered with his ability to function in a broad area, but reasonable minds could differ as to this conclusion"); Miller ex rel. Thompson v. Barnhart, 205 F. App'x 677, 680–81 (10th Cir. 2006) (ruling that certain below average grades did not "compel a finding" that a claimant's limitations were "necessarily marked rather than moderate" where claimant also displayed a record of academic progress) (internal quotation marks omitted).

Similarly, the court will overrule the objections regarding the determination that A.K. has a less than marked limitation in attending and completing tasks. The Law Judge weighed the teachers' questionnaires, which were not wholly in agreement as to the severity of the plaintiff's symptoms. R. 29. For example, an October 2017 questionnaire listed A.K. as having only one obvious problem with activities in this domain, and no problem or a slight problem with other activities. R. 312. A February 2018 questionnaire found a serious problem with one activity and obvious problems with two other activities in this realm, but no problems or slight problems otherwise. R. 320. Yet the Law Judge also noted that the record "do[es] not indicate diagnostic findings of attention deficits" and that "clinical testing showed no markedly significant

impairment." R. 22, 29; see also R. 416 (Dr. Luckett's consultative opinion that "nothing of the ADD/ADHD concern was noted whatsoever"). The Law Judge considered and discussed the record at length, and pointed to sufficient evidence in the record to support her determination. As a result, the court concludes that substantial evidence supports the Law Judge's assessment of plaintiff's ability to attend and complete tasks. See England v. Astrue, 490 F.3d 1017, 1022 (8th Cir. 2007) (finding substantial evidence of a less than marked limitation in attending and completing tasks where claimant had not repeated a grade and state agency consultants agreed, although they noted "some difficulty" in staying focused and some teachers' evaluations raised more serious concerns); Dumire ex rel. M.R. v. Astrue, No. 7:06 CV 00444, 2007 WL 2155743, at *2 (W.D. Va. July 26, 2007) (relying on reports from the claimant's treating counselor, objective psychological tests, and progress reports, among other evidence, as substantial evidence of a less than marked impairment in attending and completing tasks).

Next, the court will also overrule the objections regarding the Law Judge's determination that plaintiff has a less than marked limitation in the domain of interacting and relating with others. There is no doubt that the record contains some assessments suggesting that A.K's communicative abilities are impaired. See R. 25–26 (noting that A.K's fifth grade assessments indicated that she was "working towards" "mastering word patterns" and other linguistic goals). Alley, A.K.'s longtime speech therapist, stated that plaintiff has "great functional communication skills to verbally state her needs" and that an unfamiliar listener could understand plaintiff 90% of the time. She also noted, however, that plaintiff has "moderate difficulty with higher level expressive language tasks." R. 432–33. A 2015 teacher questionnaire described no problems in this domain. R. 225. A 2017 questionnaire described more difficulty—while still marking that A.K. had no problems in this domain—indicating that the teacher could understand one-half to two-thirds of

A.K.'s speech the first time, but noted that she could understand "almost all" of A.K.'s speech with repetition. R. 313–14; see also R. 321–22 (finding two serious problems and one very serious problem with activities in this domain, writing that plaintiff "often mumbles and mispronounces the /st/ sound"). Yet at the hearing, Lisa opined that A.K. has "[n]o speech problems now." R. 66. A.K. testified about having only one friend, but mentioned visiting that friend's house sometimes. She also enjoys playing with her nephew. R. 47, 50, 416 (reporting that plaintiff had "[n]o difficulties socially or interacting with others, according to her mother."), 441 (IEP noting that plaintiff is "very social with her peers" and has "good rapport with teachers and students"). Lisa described one incident some years prior where A.K. had pushed a boy who bothered her, but no similar problems since then. R. 64–65. On this record, the court is constrained to find that substantial evidence supports the Law Judge's determination as to the domain of interacting and relating with others. See Muhammad ex rel. T.I.M. v. Comm'r of Soc. Sec., 395 F. App'x 593, 601 (11th Cir. 2010) (claimant had "manifested behavioral problems such as kicking and name-calling during kindergarten and first grade," but that "behavior had improved during the second grade" and improved in other ways as well).

Finally, the court must overrule Lisa's objections as to the Law Judge's determination that Lisa and plaintiff's subjective allegations about the intensity, persistence, and limiting effects of plaintiff's symptoms are not entirely consistent with the record. R. 26. Lisa does not argue that the Law Judge failed to apply the correct legal analysis here. Instead, Lisa argues that the Law Judge did not accurately assess the evidence for the same reasons that Lisa objects to the Law Judge's findings as to the functional domains addressed above. The court is of the opinion that the Law Judge conducted a thorough review of the evidence and did not improperly ignore facts in the record, and thus, the court will overrule Lisa's overarching objections on this point. First,

the Law Judge acknowledged Lisa's "noted uncertainty" regarding plaintiff's communicative capacity, as well as other difficulties in learning, "sustaining attention, and persisting on task." R. 24. Next, the Law Judge turned to the educational evidence, including reports from plaintiff's IEP. For example, the Law Judge concluded that records from 2013–2014 showed "significant improvement with narrative language skills." R. 25. Likewise, the Law Judge found that records from the 2015–2016 and 2016–2017 school years revealed "adequate[]" transitions to the third grade level, "improved reading and spelling capacity," and "persistence in working towards education goals." R. 25. The Law Judge also analyzed records from plaintiff's fifth grade teachers at length. R. 25–26. In part, the Law Judge acknowledged that one questionnaire noted that plaintiff has "serious problems in some areas in acquiring and using information and attending and completing tasks," and that plaintiff receives "additional assistance" with mathematics and reading. The Law Judge concluded by discussing the medical evidence and opinion evidence, including Alley's findings, in some detail. R. 26–27. In sum, the Law Judge provided a number of specific reasons for her determination, which finds ample support in the record.

In sum, after a de novo review of the record and for the reasons set forth above, the court is constrained to conclude that the final decision of the Commissioner is supported by substantial evidence. Accordingly, the plaintiff's objections to the magistrate judge's report are overruled, the magistrate judge's recommendation will be adopted, and the final decision of the Commissioner will be affirmed.

The Clerk is directed to send copies of this memorandum opinion to all counsel of record.

DATED: This  2nd  day of September, 2020.

_____
Senior United States District Judge